IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AYANA M. ALBURG, et al., | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 20-2419 |
| | : | |
| ELIJAH K. JONES, et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

**TUCKER, J.**                                                                                 **July 26, 2021**

Before this Court are Motions to Dismiss from Defendants Ridley Township and its officers, Detective Lt. Charles A. Palo, Jr., Officer Timothy Kearney and Captain Scott Willoughby (ECF 11) and, separately, from State Troopers Elijah Jones and Douglas Drake, Corporal James Falcon, and Colonel Robert Evanchick of the Pennsylvania State Police (ECF 12). Because Plaintiffs fail to state a proper legal claim in their amended complaint, both motions are granted.

### I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

It all started with a car loan. In April 2018, Plaintiff Ayana M. Alburg took out a $693 title loan secured against her 2006 BMW from Auto Equity Loans of Delaware, LLC (AEL). The loan had an eye-watering interest rate of 300% APR, payable over 12 months with 11 monthly installments of $173.25, and a balloon payment at the end for $866.25. In July of 2018, the lender deemed the loan to be in default, and hired Top Notch Recovery, Inc., to repossess the

---

[1] This section primarily draws from the "Facts Alleged" section of the Ridley Township Police Defendants' Motion to Dismiss (ECF 11). Where there are disagreements or omissions, the Pennsylvania State Police Defendants' Motion to Dismiss (ECF 12) and Plaintiffs' Response Opposing the Motions to Dismiss (ECF 15) will be cited.

1

vehicle. When the car was seized, Top Notch took the vehicle to a lot in Montgomery County. This was a self-help repossession not performed under a court order.

On August 3, 2018, Plaintiff Alburg went to the Top Notch lot to purportedly retrieve her personal effects from the repossessed vehicle. The employee of the repossession company unlocked the gate to allow her to go to her car, but did not re-close the gate. Alburg then decided to leave the lot with the repossessed vehicle. The lot attendant subsequently reported the car as stolen to the Pennsylvania State Police (PSP). Trooper Elijah Jones of the PSP took the report from the employee.

Two weeks later on August 17, 2018, Plaintiff Timothy Edwards had borrowed the car from Alburg and was driving that repossessed BMW—listed in police databases as stolen—in Ridley Township. Officer Timothy Kearney of the Ridley Township Police saw that it was reported as stolen, and made a car stop, subsequently arresting the occupants. Detective Lt. Charles Palo was in charge of the subsequent investigation.

Ridley Township Police contacted the PSP to confirm the report that the vehicle was stolen. Plaintiffs allege that one of the Ridley Twp. officers spoke with Trooper Doug Drake, who explained the information in the report written by Trooper Jones. This led to Edwards being charged with receiving stolen property and unauthorized use of a motor vehicle, as well as with driving on a suspended license. Detective Lt. Palo drafted the subsequent affidavit of probable cause and criminal complaint.

Edwards was held in custody for two weeks before bailing out. In an October 29, 2018 preliminary hearing, Officer Kearney stated that the vehicle had been owned by the lender at the time Mr. Edwards was driving. The charges against Edwards for theft and unauthorized use were

voluntarily dismissed by the Delaware County DA's Office, but he pled guilty to the summary offense of driving on a suspended license.

Meanwhile, the vehicle had been turned over after Edwards' arrest to Verone's, a towing company. The tow company was instructed to deliver the vehicle back to the lender.

In September 2018, in response to a letter from Plaintiffs' counsel, Robert F. Salvin, Pennsylvania State Police Corporal Thomas Falcon began investigating whether Alburg could be charged with theft. PSP Defs.' Mot. Dismiss 4 (ECF 12). On September 4, he reviewed the report from Trooper Jones and spoke to a Montgomery County ADA, who said that proper ownership would be determined by title. *Id.* After a review of the title history and PennDOT records on the car, Corporal Falcon determined that Alburg was the current owner and AEL was the current lienholder, making AEL the "true owner" of the vehicle. *Id.* at 4-5. Trooper Jones drafted a criminal complaint and arrest charges for theft unlawful taking, theft by deception, and unauthorized use of a motor vehicle, which were approved by a magistrate judge. *Id.* at 5. Alburg was arrested February 2, 2019. *Id.* The theft charges were dismissed after a May 22, 2019 preliminary hearing, and the unauthorized use of motor vehicle charge was dismissed on September 13, 2019. *Id.*

Alburg and Jones filed this lawsuit against the officers of the Ridley Township Police and Pennsylvania State Police on May 22, 2020, alleging that the officers had violated their civil rights in violation of 42 U.S.C. § 1983 through an illegal seizure of property in violation of the Fourth and Fourteenth Amendments. The complaint also makes a malicious prosecution claim against Detective Lt. Palo and Officer Kearney, and against Trooper Jones and Corporal Falcon. PSP Defs.' Mot. Dismiss 6.

## II. STANDARD OF REVIEW

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Argueta v. US. Immigration & Customs Enf't*, 643 F.3d 60, 74 (3d Cir. 2011). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Ultimately, "[a] court may dismiss a complaint for failure to state a cause of action only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Gupta v. Albright Coll.*, No. 05-1921, 2006 WL 162977, at *1 (E.D. Pa. Jan. 19, 2006) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

## III. DISCUSSION

### A. Plaintiffs' Reference to "Self-Help Repossessions" is a Red Herring; The Trooper Jones Police Report Was a Legitimate Law Enforcement Activity

Plaintiffs in their response attempting to avoid dismissal claim that the police stop and subsequent arrest of Edwards, and even the concept of the PSP taking down a stolen vehicle report after Alburg engaged in her own "self-help", all constitute the police aiding a creditor's "self-help" repossession. This is the thin reed Plaintiffs' case stands on, as the purported illegitimacy of the creditor's claim to Alburg's car is the only thing distinguishing the sequence of events relating to Plaintiffs from routine police work. However, the facts here differ significantly from the self-help repossession precedent cited.

4

Plaintiffs argue that because the actions of both police departments constituted a self-help repossession, the agencies violated 42 U.S.C. § 1983. However, the roles of both departments here differ significantly from that caselaw. In *Abbott v. Latshaw*, the Third Circuit case Plaintiffs point to, a constable participated in the forcible repossession of a vehicle based on disputed title, without warning the person whose property was being repossessed, and on the basis of an individualized personal dispute. 164 F.3d 141, 144-145 (3d Cir. 1998). The court ruled that the constable and local police later called to the scene were not entitled to qualified immunity for the § 1983 violation because they participated in a property deprivation despite established circuit precedent that "it is not for law enforcement officers to decide who is entitled to possession of property." *Id.* at 149. Additionally, the law enforcement agents in that case "had reason to believe . . . that Abbott had a bill of sale at home to support his ownership of the vehicle," and ignored the fact that Abbott had lawfully used the vehicle for seven years. *Id*. This is a marked contrast to the situation here.

After entering the loan, validly secured against title in her vehicle, Alburg's car was repossessed by Auto Equity Loans (AEL) and taken to the lot of its contractor, Top Notch. Pl's Resp. Opp'n. Mot. Dismiss 2 (ECF 15). That lot, which was locked and gated, was the place from where Alburg retrieved her vehicle while there on the pretense of picking up her personal belongings. *Id*. A seizure of collateral after default without judicial process is permitted under Pennsylvania law if it is done "without breach of the peace". 13 Pa. Stat. Ann. § 9609(b)(2). Such a seizure is valid even if the underlying loan creating the secured interest is usurious under Pennsylvania law, as Plaintiff contends. See *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 147 (3d Cir. 2016) ("Even when the interest rate is usurious, however, the [Pa. Loan Interest and Protection Law] does not void the entire loan or the legal interest, nor does it make it illegal for a

lender to collect an unpaid debt. Instead, the LIPL only makes voidable 'the interest specified beyond the lawful rate'") (quoting *Pennsylvania Dep't of Banking v. NCAS of Delaware, LLC*, 995 A.2d 422, 440 (Pa. Commw. Ct. 2010)). Plaintiffs imply that the loan Alburg was subject to constituted a legal nullity because of the high interest rate. This is simply not true.

The PSP did not violate the law enforcement role by taking down the stolen vehicle report from the Top Notch employee. No violations of 73 Pa. Stat. Ann. § 2270.4—Pennsylvania's law on unfair and deceptive debt collection practices—are alleged as to AEL or the actions of its contractor, Top Notch, in the initial repossession of Alburg's vehicle, and no breach of peace under § 9609(b)(2) is alleged by Plaintiffs. Additionally, the core concern of the established rule against law enforcement participation in "self-help" repossessions is that a possessory interest triggers due process rights. *Abbott*, 164 F.3d at 146. ("Clearly their possessory interest in the goods, dearly bought and protected by contract, was sufficient to invoke the protection of the Due Process Clause.") (quoting *Fuentes v. Shevin*, 407 U.S. 67, 87 (1972)). However, the link of that possessory interest had been broken when the vehicle was lawfully seized by Top Notch and taken to a secured lot. Alburg, by virtue of seeing that the lot was secured, was placed on notice that re-seizing the vehicle could lead to legal consequences, up to and including the involvement of law enforcement. Without a possessory interest, a due process question does not arise. *Id.* Therefore, the claims against Trooper Jones are dismissed.

### B. The Ridley Township Police Car Stop Was Backed by Probable Cause

The biggest weakness of Plaintiffs' suit is that probable cause existed for the car stop of Edwards and his subsequent arrest. To make a valid claim under § 1983 for false arrest or false imprisonment in violation of the Fourth Amendment, a plaintiff needs to demonstrate (1) that an arrest occurred, and (2) the lack of probable cause for the arrest. *James v. City of Wilkes-Barre*,

6

700 F.3d 675, 680 (3d Cir. 2012). This exists "when the totality of facts and circumstances are sufficient to warrant an ordinary prudent officer to believe that the party charged has committed an offense." *Garcia v. Cty. of Bucks*, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001). Evidence that "may prove insufficient to establish guilt at trial" can still provide for a lawful arrest, and probable cause need only be established as to "any offense that could be charged under the circumstances" to avoid a false arrest claim. *Damico v. Harrah's Philadelphia Casino & Racetrack*, 674 F. App'x 198, 201-02 (3d Cir. 2016) (citing *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994)).

Probable cause existed for the arrest by the Ridley Township officers. Officer Kearney had seen the vehicle being operated by Edwards and listed as stolen, which was the basis for a valid car stop. Additionally, Edwards was driving on a suspended license, a summary offense under 75 Pa. Stat. Ann. § 1543(a). Established Supreme Court precedent dictates that an officer can arrest an offender if they possess probable cause to believe that "even a very minor criminal offense" was committed. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Driving on a suspended license would qualify as such a minor offense. Therefore, the false imprisonment claims against Officer Kearney, Detective Lt. Palo, Captain Willoughby, and Ridley Township are dismissed.

A claim of malicious prosecution also requires a showing that the arrest lacked probable cause. *Kossler v. Chrisanti*, 564 F.3d 181, 193-4 (3d Cir. 2009). Because there was probable cause for the arrest, the malicious prosecution claim against Detective Lt. Palo and Officer Timothy Kearney also fails. Even if there was a finding of probable cause as to the arrest, a claim for malicious prosecution under either federal or state law first requires the plaintiff to show that the criminal proceeding ended in their favor. *Est. of Smith v. Marasco*, 318 F.3d 497, 521 (3d

Cir. 2003) (as to federal law); *Turano v. Hunt*, 158 Pa. Cmwlth. 348, 352, 631 A.2d 822, 824 (1993) (as to state law). Edwards pled guilty to driving under a suspended license, therefore a malicious prosecution claim is unsuccessful on two elements.

### C. The Lack of Underlying Unconstitutional Conduct Disposes of Claims Against the Rest of the PSP Defendants

*Trooper Douglas Drake*

Pennsylvania State Police Trooper Douglas Drake also faces a false imprisonment § 1983 claim, on the basis that he relayed to the Ridley Township officers information in the stolen vehicle report. Because the arrest of Edwards was made with probable cause, this claim is unsuccessful. Additionally, even if there was a valid claim of false arrest stemming from the Edwards arrest, because false arrest and false imprisonment claims under § 1983 are analyzed under "nearly identical" rubrics, there needs to be evidence of an officer's involvement in a plaintiff's arrest for that plaintiff to make a claim of false imprisonment against that same officer. *Dixon v. Schweizer*, No. CV 18-5403, 2020 WL 4600187, at *13 (E.D. Pa. Aug. 11, 2020). Where there was no false arrest liability for an officer but false imprisonment liability, it was because the defendant officer "later provided critical information that 'directly led to [the plaintiff's] imprisonment.'" *Id.* (quoting *Cox v. Hackett*, No. 05-2260, 2006 WL 2129060, at *6 (E.D. Pa. July 27, 2006)). In Edwards' case, Drake relayed the information after Edwards had already been arrested, on a separate valid basis (driving with a suspended license). Therefore, the claim for false imprisonment against Trooper Drake is dismissed.

*Corporal Thomas G. Falcon*

Corporal Thomas Falcon faces counts of false arrest, false imprisonment, and malicious prosecution from both Plaintiffs for his role in the subsequent investigation and charging of

8

Plaintiff Alburg with theft. The Amended Complaint does not allege any facts supporting claims against Corporal Falcon from Plaintiff Edwards, as Falcon's involvement in the case came after Edwards' arrest, preliminary hearing, and August 31, 2018 release on bail. Corporal Falcon's investigation as to charging Alburg didn't begin until September 2018. Am. Compl. ¶ 66-70. Therefore, Falcon's personal involvement in the alleged constitutional violations as to Edwards has not been established. *Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003) (stating "personal involvement" a necessary element of § 1983 liability).

Furthermore, because the stolen vehicle report as to Alburg's seizure of the car from the repossession lot was not a violation of § 1983 (*see supra* Section A), an investigation as to whether she had stolen a vehicle that was legitimately reported as stolen can't constitute a violation of her rights. The claims against Corporal Falcon are also dismissed.

*PSP Commissioner and Colonel Robert Evanchick*

Plaintiffs Edwards and Alburg make myriad claims against Commissioner Evanchick for false imprisonment and arrest, illegal seizure of property, and "failure to train", an apparent *Monell* claim. Each of these are dismissed. As a threshold matter, a defendant in a civil rights action "must have personal involvement" for § 1983 liability. *Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003). A claim against the PSP Commissioner in a case like this is particularly suspect because "liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The non-viability of such *respondeat superior* claims means that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Such allegations of personal knowledge through individual direction or actual knowledge and acquiescence need "appropriate particularity". *Id.* No such particularity

exists here. No allegation is made as to Commissioner Evanchick's role in the events of the complaint, or even his awareness of those events. As the PSP Defendants note, "[Evanchick's] name does not appear anywhere in the factual background section of the Amended Complaint." PSP Defs.' Mot. Dismiss 8 (ECF 12).

Additionally, the purported *Monell* claim as to "failure to train" cannot succeed. A municipality can be found liable under § 1983 where a "policy" or "custom" is the reason for a constitutional violation, and supervisory officials' "failure to train" can support municipal liability. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Canton v. Harris*, 489 U.S. 378, 388–89 (1989). However, there was not an underlying constitutional violation in this case. *See supra* Section B. Therefore, a "failure to train" claim premised on the existence of a constitutional violation inherently fails, and is dismissed.

### IV.   CONCLUSION

For the foregoing reasons as to the legal conduct of the officers in this suit from both departments, the Motions to Dismiss of both the Ridley Township and Pennsylvania State Police Defendants are **GRANTED**.

An appropriate order follows.