**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AYANA M. ALBURG** | : | **CIVIL ACTION** |
| **TIMOTHY Q. EDWARDS** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ELIJAH K. JONES, THOMAS G.** | : | |
| **FALCON, DOUGLAS DRAKE, COLONEL** | : | |
| **ROBERT EVANCHICK, DETECTIVE LT.** | : | |
| **CHARLES A. PALO, JR., TIMOTHY** | : | |
| **KEARNEY, CAPTAIN SCOTT** | : | |
| **WILLOUGHBY, TOWNSHIP OF RIDLEY** | : | |
| **a/k/a Ridley Township and JOHN DOE** | : | **NO. 20-2419** |

<u>**MEMORANDUM OPINION**</u>

**Savage, J.**                                                                            **May 21, 2025**

Can a car owner steal her own car?  Despite the obvious answer, the defendant police officers insist they had probable cause to arrest and prosecute the car owner and the driver of her car who was operating it with her permission for theft offenses.

It all started when plaintiff Ayana Alburg surreptitiously retrieved her car from a storage lot where a loan company had it towed after it was repossessed.  The lot attendant called the police to report a theft.  Defendant Elijah Jones, a Pennsylvania State Police ("PSP") Trooper who responded to the call, listed the car as stolen on a national database.  Alburg was eventually arrested and prosecuted for stealing her car.  In the meantime, plaintiff Timothy Edwards, while driving Alburg's car with her permission, was arrested and prosecuted for receiving stolen property and traffic offenses.  Unable to make bail, he spent two weeks in jail.

Then came this § 1983 lawsuit.  Alburg brought claims for illegal seizure of

property, deprivation of property without due process, conversion, false arrest, false imprisonment, failure to train, and malicious prosecution. Edwards raised claims for false arrest, false imprisonment, failure to train, and malicious prosecution.[1]

After a long procedural history, including a trip to the Third Circuit and back, several rounds of motions to dismiss, a motion for judgment on the pleadings, and reassignments to two district judges, the plaintiffs' claims have been reduced and some defendants have been dismissed.[2] The remaining claims are: (1) Count I against Jones and Ridley Township Police Detective Charles A. Palo Jr. for illegal seizure of Alburg's car and deprivation of property without due process; (2) Count II against Jones and Corporal Thomas J. Falcon for false arrest of Alburg; (3) Count VI against Jones and Falcon for malicious prosecution of Alburg; and (4) Count VI against Jones, Palo, and Ridley Township Police Officer Timothy Kearney for malicious prosecution of Edwards.

The parties have filed cross motions for summary judgment. Plaintiffs move for summary judgment on liability on Alburg's false arrest and malicious prosecution claims against Jones and Falcon, Alburg's claim of illegal seizure and violation of due process against Jones and Palo, and Edwards's claim of malicious prosecution against Jones, Kearney and Palo.

Palo moves for summary judgment on Alburg's illegal seizure claim. Kearney and Palo move for summary judgment on Edwards's malicious prosecution claim. Jones and Falcon move for summary judgment, arguing Jones was not involved in the seizure of the car. All defendants invoke qualified immunity.

The undisputed facts show that Jones, Kearney, and Palo are entitled to summary judgment on Count I for claims of illegal seizure of Alburg's car and denial of due process.

Because there are factual disputes and credibility issues bearing on the probable cause element on the remaining counts, we shall deny summary judgment on Count II for false arrest and Count VI for malicious prosecution as to Alburg.  Jones, Palo, and Kearney are entitled to qualified immunity as to Edwards's malicious prosecution claim.

**Background**

Ayana Alburg obtained a loan from Auto Equity Loans of DE, LLC ("AEL").[3]  The loan, which had a 300% A.P.R. interest rate, was secured by a lien on Alburg's 2006 BMW X5.[4]  After Alburg defaulted, AEL hired Top Notch Recovery, Inc. ("Top Notch") to repossess the car,[5] which it did.

On August 3, 2018, Alburg went to the Top Notch lot to get her personal possessions.[6]  While the lot attendant and owner, Christopher Smith, was with another person, Alburg drove her car away.[7]  Smith called the police and reported a stolen car.[8] He informed State Trooper Elijah Jones, who responded to the call, that Top Notch had repossessed the car on behalf of AEL.[9]  He showed Jones an "order to repossess."[10]  It was AEL's request for Top Notch to repossess Alburg's car, not a court order.[11]  Jones entered the car as stolen in the national CLEAN/NCIC crime database.[12]  He summarized the event in the database, stating the "registered owner left with the vehicle."[13]  The database named Alburg as the registered owner.[14]

Two weeks later, on August 17, 2018, Edwards was driving the car with Alburg's permission.[15]  After observing a blue tarp covering the rear window, Ridley Township Police Officer Kearney ran the car's tag in the CLEAN database.[16]  The search reported the car as stolen.[17]  Kearney stopped the car and arrested Edwards.[18]  At the police station, Edwards was charged with receiving stolen property, unauthorized use of a motor

vehicle, driving under a suspended license, and driving without a license.[19]

Kearney had the vehicle towed to Verone's Collision.[20]  The following day, AEL retrieved the car from Verone's and later sold it at auction.[21]

In his report, Kearney described the car stop and the arrest.  He wrote that the vehicle was "owned" by AEL.[22]

Palo, relying on Kearney's report, drafted a criminal complaint and an affidavit of probable cause against Edwards.[23]  In the affidavit, Palo identified AEL as the owner of the vehicle.[24]  He did not include that Alburg was the registered owner and that the incident involved a repossession.[25]  Based on Palo's affidavit and criminal complaint, a magisterial district judge issued an arrest warrant, charging Edwards with receiving stolen property and unauthorized use of a vehicle.[26]  He also approved summary offenses of driving without a license and driving on a suspended license.[27]  Bail was set at $10,000.[28] Edwards remained in jail for two weeks until he was able to post bail.[29]

Alburg's counsel sent a letter, dated August 22, 2018, to Jones and Corporal Thomas Falcon.[30]  He explained that Alburg was the title owner of the car, she could not have stolen her own car, Edwards had permission to drive her car, AEL was a secured creditor trying to collect a debt, and the police were required to stay neutral in creditor-debtor disputes.[31]

Falcon, Jones's supervisor, considered bringing charges against Alburg.[32]  He sought the advice of Assistant District Attorney Evan Correia, who advised him that ownership of the vehicle is determined by the title.[33]  Falcon reviewed the title, which listed Alburg as the owner and AEL as a lien holder.[34]  Disregarding the assistant district attorney's legal advice, Falcon pressed forward.  He decided that she was not the owner

4

of the vehicle and AEL was the "true owner."[35]  He directed Jones to file a criminal complaint against Alburg.[36]  Jones drafted a criminal complaint and an affidavit of probable cause in which he represented that the vehicle was owned by AEL.[37]  Based upon the complaint and the affidavit, a magisterial district judge issued an arrest warrant charging Alburg with theft by unlawful taking, theft by deception, and unauthorized use of a motor vehicle.[38]

On February 4, 2019, Alburg was arrested.[39]  The Montgomery County Court of Common Pleas dismissed the theft charges on May 22, 2019, and the charge for unauthorized use of a motor vehicle on September 13, 2019.[40]

On February 12, 2019, in the Delaware County Court of Common Pleas, Edwards pleaded guilty to driving on a suspended license.[41]  The judge imposed a $200 fine.  The theft charges were dismissed.[42]

### Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Pro. 56(a).  Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering the motion, we draw all reasonable inferences in the nonmovant's favor.  *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003).  Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment.  *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (citation omitted).  Credibility determinations, the

drawing of legitimate inferences from facts and the weighing of evidence are matters left to the jury. *In re Asbestos Prod. Liab. Litig. (No. VI)*, 822 F.3d 125, 135-36 (3d Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## Analysis

The seizure of Alburg's car and her arrest arose out of a private dispute between a creditor and a debtor. At all times, it was a civil dispute between two private parties.

In the private repossession context, the police must maintain neutrality and refrain from taking an active role in the repossession. *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609-10 (3d Cir. 2011) (citing *Abbott v. Latshaw*, 164 F.3d 141, 147 (3d Cir. 1998)). When an officer plays an active role, he has chosen a side and is no longer neutral. *Id.* He takes an active role when he facilitates, encourages, directs, compels, or affirmatively assists in the repossession. *Id.* at 610. Unless and until the dispute is resolved by a court, the police are required to remain neutral. The officer is liable if he "aid[s] the repossessor in such a way that the repossession would not have occurred but for [his] assistance." *Id.* (citing *Marcus v. McCollum*, 394 F.3d 813, 819 (10th Cir. 2004)).

Jones took AEL's side. He decided that the car belonged to AEL. In doing so, he unreasonably relied on Top Notch's "repossession order," which was only AEL's request for Top Notch to take the car and turn it over to AEL. There was no court order.

AEL could have effectuated another self-help repossession by directing Top Notch to pick up the car again. It could have gotten a court order to repossess the car. It did neither. Instead, Top Notch enlisted the help of law enforcement. Jones obliged. He reported the car as stolen.

Jones facilitated and aided AEL's repossession of Alburg's car when he listed it on a national database as stolen. He may not have been present at the repossession. But, he set in motion the chain of events that resulted in the second repossession. Had he not listed the car as stolen, Edwards would not have been arrested and charged with receiving stolen property, nor would Alburg have been arrested and charged with theft. Jones was aware of these potential consequences when he reported the car as stolen on a national data base.

The claims flow from the defendants' failing to maintain neutrality and in taking actions transforming a private dispute into a criminal matter that facilitated and aided AEL's second repossession of Alburg's car, and led to the arrest and prosecution of Alburg and Edwards. Against this backdrop, we examine each claim.

<em>Illegal Seizure</em>[43]

The Fourth Amendment protects citizens from unreasonable searches and seizures. *Lange v. California*, 594 U.S. 295, 301 (2021). A Fourth Amendment seizure occurs when there is meaningful interference with possessory interests of property. *U.S. v. Jones*, 565 U.S. 400, 408 n.5 (2012). Meaningful interference includes the exercise of "dominion and control" over or destruction of property. *Stone v. Martin*, 720 F. App'x 132, 134–35 (3d Cir. 2017) (quoting *United States v. Jacobsen*, 466 U.S. 109, 120-21 (1984)); *Brown v. Muhlenberg Tp.*, 269 F.3d 205, 209 (quoting *Jacobsen*, 466 U.S. at 124-25).

There is no question there was a seizure of Alburg's car. The issue is whether the seizure was reasonable.

"A seizure is reasonable under the Fourth Amendment if, under the totality of the circumstances, 'the officers' actions are objectively reasonable in light of the facts and

circumstances confronting them, without regard to their underlying intent or motivations.'" *Kokinda v. Breiner*, 557 F. Supp. 2d 581, 589 (M.D. Pa. May 6, 2008) (quoting *Graham v. Connor,* 490 U.S. 386, 397 (1989)). "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively,* justify [the] action.'" *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006) (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)) (emphasis added).

Palo and Kearney claim the seizure of Alburg's car was "reasonable" because the police are authorized by statute to seize a vehicle after an arrest of the operator. They are correct. If the driver of a vehicle is arrested, a police officer may have the car removed to a garage or "other place of safety." 75 Pa. C. S. § 3352(c)(3). When Edwards was arrested,[44] Kearney was authorized to have the car towed to a nearby garage. *Id.* at §§ (c)(1), (3). Therefore, at that point, there was no unlawful seizure under the Fourth Amendment.

Even if there had been an unreasonable seizure, Palo was not involved. He was not present when the car was towed and he took no part in the decision to tow it. Jones also was not involved in the seizure. He did not conduct the traffic stop and did not direct that the car be towed. His listing the car as stolen in the national database instigated, in part, the chain of events that led to the seizure. But, even if the car was not in stolen status, Kearney would have stopped it because the tarp on the rear window violated the Motor Vehicle Code. Kearney would have learned then that Edwards did not have a valid operator's license. Edwards could not have driven the car without a valid license. Hence,

Kearney would have been authorized to have the car taken to Verone's even if it had not been listed as stolen.

Neither Jones, Kearney, nor Palo are liable for the seizure of the car.[45]  They are entitled to judgment in their favor.

*Due Process[46]*

Alburg argues that Jones and Palo deprived her of property without procedural due process.  She claims they notified AEL where it could get the car and did not give her the notice required by Pennsylvania law.

To determine whether an individual received due process, we "examine[] the procedural safeguards built into the statutory ... procedure ... effecting the deprivation, and any remedies for erroneous deprivations provided by statute." *In re Energy Future Holdings Corp.*, 949 F.3d 806, 822 (3d Cir. 2020) (citing *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 138 (3d Cir. 2010)). We ask whether the government has met the "core of due process"—"an 'opportunity to be heard at a meaningful time and in a meaningful manner.'" *Frein v. Pa. State Police*, 47 F.4th 247, 257 (3d Cir. 2022) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).  The state must provide a hearing or other opportunity to be heard before depriving a person of her property.  *Montanez v. Sec'y Pa. Dep't of Corr.*, 773 F.3d 472, 483 (3d Cir. 2014) (quoting *Zinermon v. Burch*, 494 U.S. 113, 132 (1990)).

After the car was towed to Verone's, the police were no longer involved.  They are not responsible for what happened to the car after it was towed.  Unless, of course, they assisted AEL in getting it from Verone's.  The car was released to AEL, but at that point

the car was no longer in the possession of the police and Alburg has not produced any evidence showing that the release to AEL was a result of any defendant's action.

There is no evidence that Palo or Kearney affirmatively acted to enable AEL to get the car. Kearney prepared a tow slip that stated the car could be released to its "owner," but did not identify the owner. Both Palo and Kearney submitted sworn statements, denying that they authorized the release. Kearney states that an administrator, whom he identifies as Ian Clayhorn, did. There is no evidence that any defendant released the car to AEL or directed Verone's to release it to AEL.

Jones was not involved in releasing the car to AEL. Although he listed the car as stolen in the national database, he played no role in its release to AEL.

Contrary to Alburg's argument, Palo had no obligation to notify her of her car's location after it was towed so she could retrieve it. The Motor Vehicle Code provides that "[w]ithin 48 hours of the recovery … the police shall notify the owner of the vehicle." 75 Pa. C. S. § 7113(b). The statute further provides that "[i]f the vehicle was recovered by a department other than the department to which the theft was originally reported, the department that recovered the vehicle shall promptly notify the department to which the theft was originally reported, which department in turn shall notify the owner." *Id.* The alleged theft had been originally reported to the State Police, not the Ridley Township Police Department, which had an obligation to notify the State Police of the car's recovery. Kearney did so when he notified the State Police to confirm the vehicle was still in stolen status.

The failure to notify Alburg of her car's location does not constitute a due process violation. However, if the police enabled AEL to get the car from Verone's, the police

action could be considered as having improperly intervened in a self-help repossession. But, we reiterate there is no evidence that Jones or Palo informed AEL that it could get the car at Verone's.

The car was released to AEL the day after it was towed to Verone's. The release was authorized by Ian Clayhorn, administrative assistant to the police department.[47] What basis did he have to authorize release to AEL? Who instructed him to do so? We cannot speculate what the answers to these questions are. Therefore, in the absence of any evidence from which a reasonable jury could conclude or infer that Jones or Palo notified AEL of the car's location to assist in a repossession, we shall grant summary judgment in favor of the defendants on the due process claim.

*False Arrest*

Lack of probable cause is an essential element of the false arrest and the malicious prosecution claims. The standard for determining probable cause is the same for both claims. *See Mervilus v. Union County*, 73 F.4th 185, 194 (3d Cir. 2023); *Geness v. Cox*, 902 F.3d 344, 356-57 (3d Cir. 2018).

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016) (citing *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995)). The issue is not actual innocence or guilt, but rather whether the arrest was supported by probable cause. *See Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005).

"A seizure is usually reasonable when it is carried out with a warrant based on probable cause."  *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006) (citing *Katz v. United States,* 389 U.S. 347, 356-57 (1967)).  A search warrant issued on the basis of false material statements or omissions made either knowingly or intentionally, or with reckless disregard for the truth cannot support probable cause or render the seizure reasonable.  *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *Mervilus*, 73 F.4th at 194 (citing *Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir. 2000)).  The *Franks* rule requires that the applicant for a search warrant include all material information – inculpatory and exculpatory – that has a bearing on and can affect the probable cause determination. The police can not present only inculpatory evidence to the magistrate. *Wilson*, 212 F.3d at 787.

The same rule applies to an arrest warrant.  *Mervilus*, 73 F.4th at 194.  Typically, the issuance of an arrest warrant establishes probable cause. Nevertheless, despite the existence of an arrest warrant, a plaintiff may establish a lack of probable cause by showing (1) an officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant;" and (2) the statements or omissions were "material, or necessary, to the finding of probable cause." *Wilson*, 212 F.3d at 786-87.  An omission is made with reckless disregard if the officer withholds something that "any reasonable person" would consider "the kind of thing[] the judge would wish to know."  *Id.* at 788 (internal citation omitted).

Exculpatory evidence affects the probable cause determination.  *Wilson*, 212 F.3d at 787-88.  So does omitted information that may cast doubt on probable cause that a crime was committed.  It is information the magistrate or issuing judge should know.

It is undisputed that Alburg was arrested. The dispute is whether Jones and Falcon had probable cause to believe that she had committed the crimes charged.

To assess whether the arrest of Alburg was based on probable cause, we must identify the elements of the crimes charged. A person is guilty of theft by unlawful taking if she "unlawfully takes, or exercises unlawful control over, movable *property of another* with intent to deprive him thereof." 18 Pa. C. S. § 3921(a) (emphasis added). Theft by deception is defined as "intentionally obtain[ing] or withhold[ing] *property of another* by deception." 18 Pa. C. S. § 3922(a) (emphasis added). A person commits unauthorized use of an automobile if she "operates the automobile … of *another* without consent of the owner." Pa. C. S. § 3928(a) (emphasis added). Thus, an essential element of the offenses is that the property taken or used by the person belonged to another person.

An owner cannot commit the crimes of theft, theft by deception or unauthorized use by taking her property from a lienholder or by using her own property. The Pennsylvania theft statute specifically excludes from the definition of "property of another" property of those having "only a security interest." 18 Pa. C. S. § 3901. Similarly, the Pennsylvania Motor Vehicle Code excludes a "lienholder" from the definition of owner. 75 Pa. C. S. § 102.

Yet, Jones, at Falcon's direction, represented in the affidavit of probable cause that Alburg had "no legal right" to the vehicle. The complaint misrepresented that Alburg took the "property of another." Jones wrote that the car "belonged" to AEL and was owned by AEL.[48] Again, he swore that Alburg had no legal right to the car. Those statements were false. AEL was only a lienholder and Alburg was the owner.

Jones contends that he made a reasonable investigation because he relied on Falcon's research. Falcon argues that he had reasonably relied on the advice of a fellow trooper. He did so even though an assistant district attorney gave him contrary advice. The fellow trooper told him that AEL, as the lienholder, was the "true owner" of the vehicle.[49]

At oral argument, counsel argued that Falcon did not disregard the ADA's advice because Correia said that ownership was determined by title and AEL was listed as a lienholder on the title, making it the owner. This is incorrect. Alburg was the registered owner of her car when she drove it off the Top Notch lot. After repossession, a party with a secured interest in the collateral has possession, but not ownership. The lienholder's interest is not superior to the owner's interest. Significantly, as we know, the criminal statutes clearly provide that a person cannot commit a theft crime by taking her own property and a lienholder is excluded as a property owner. In other words, Alburg could not have committed the theft crimes.

ADA Correia confirmed that the owner was the person on the title. Deliberately ignoring this advice, Jones and Falcon submitted an affidavit of probable cause and a criminal complaint that omitted material facts that, if included, would have led to a different determination of probable cause.[50]

A police officer may rely on a judicial determination of probable cause to avoid liability. But, when the police officer obtains such a determination by misrepresenting the facts and pressing forward to secure an arrest warrant for charges that are legally impossible, he cannot escape liability.

Whether probable cause existed is a factual determination for a jury. *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468 (3d Cir. 2016) (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 635 (3d Cir. 1995)). However, when the evidence, viewed in favor of the non-moving party, "reasonably would not support a contrary factual finding," a court may conclude that probable cause existed as a matter of law. *Dempsey*, 834 F.3d at 468 (quoting *Sherwood*, 113 F.3d at 401); *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788-89 (3d Cir. 2000).

A reasonable jury could find that had Jones included all the material facts, including exculpatory information, the magisterial district judge would not have found probable cause. It could also find that although Jones and Falcon disregarded the ADA's advice, they reasonably relied on information they received from a trooper who specialized in vehicle fraud. On the other hand, a jury could find that their reliance in the face of the ADA's advice was not justified and their version is incredible. In either case, credibility determinations are matters left to the jury. Neither Jones nor Falcon are entitled to summary judgment on Alburg's false arrest claim.

## Malicious Prosecution

To prove a malicious prosecution claim, a plaintiff must establish that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Alburg*, 2023 WL 2823895, at *3 (citing *Est. of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

It is undisputed that Jones and Falcon initiated a criminal proceeding against Alburg,[51] the proceeding ended in her favor,[52] and she suffered a deprivation of liberty.[53] The dispute is whether the prosecution was initiated without probable cause and was brought maliciously or for an improper purpose.

At the risk of repetition, we must reiterate some facts we discussed in the false arrest analysis. They are necessary to an analysis of the malicious prosecution claims. Jones drafted a criminal complaint and a supporting affidavit of probable cause that resulted in the issuance of the warrant for Alburg's arrest. In the complaint, he misrepresented the identity of the owner, writing that the vehicle "belonged" to AEL and was "owned" by AEL. He omitted that Alburg was the title owner and that AEL's repossession "order" was a private request while creating the impression that there was a court order.

Those omissions were material to a finding of probable cause. Indeed, when the facts came to light, all charges were dismissed. The omitted information would have shown that Alburg was the owner and AEL was only a lienholder which did not have a court order. The issuing judge would have wanted this information in determining whether there was probable cause that Alburg had taken "the property of another" – an essential element of theft by unlawful taking, theft by deception, and unauthorized use of an automobile.[54]

The magisterial district judge who issued the warrant held Alburg for trial on the theft by unlawful taking, theft by deception, and unauthorized use of an automobile charges. So, Jones and Falcon argue, the alleged misrepresentations and omissions would not have prevented the judge from signing off on the warrant because they did not

stop the judge from finding a *prima facie* case.  However, they ignore that the magisterial district judge did dismiss the charges when the information that Jones had withheld was revealed.

Jones and Falcon also claim that they conducted a reasonable investigation.  They do not explain what Jones did.  In Falcon's case, he sought advice from a prosecutor. After the prosecutor advised him that ownership is determined by title and knowing that Alburg was the title owner, Falcon ignored the legal advice. Defendants claim that because AEL was on the title as a lienholder, the prosecutor's advice supported the police officer's representation that Alburg had stolen the car.  It did not.

Falcon contacted Trooper Rastegarpanah who purportedly specialized in vehicle fraud, not stolen vehicles.  Rastegarpanah allegedly told him that Alburg was the registered owner, but AEL was the true owner of the vehicle because it had a lien.  He did not provide any explanation or legal authority.  Indeed, if such advice was given, it was contrary to the law.

Pennsylvania law is clear.  A security interest does not create ownership in the secured property.  *See* 18 Pa. C. S. § 3901. Even after repossession, the owner retains ownership of the collateral until it is disposed.  *See* 13 Pa. C. S. § 9617.  An assistant district attorney told Falcon so, explaining that the titleholder was the owner of the car.

A reasonable jury could find that Falcon's pressing forward after being informed by Correia that Alburg was the owner and his eventual reliance on a fellow state trooper instead of an assistant district attorney was deliberately indifferent to and in reckless disregard of Alburg's rights.  The jury will be instructed that the registered owner could not have committed the offenses of theft by unlawful taking, theft by deception, and

unauthorized use of her own vehicle.  The jury could find incredible Falcon's claim that he did not know the law precluded theft charges against Alburg for "stealing" her own car.

Jones claims that he reasonably relied on Falcon's instructions. Although Jones did follow the directive to draft a complaint and an affidavit, he is still responsible for knowingly omitting material information bearing on probable cause that a judge would have wanted to know before authorizing an arrest warrant.

Jones and Falcon argue the malicious prosecution claim also fails because Alburg cannot establish the element of malice.  Alburg need only show the case was brought for a purpose other than bringing her to justice and it was brought with a reckless disregard for the truth in determining probable cause. *See Mervilus*, 73 F.4th at 194.  Because Alburg committed no crime, the case could not have been brought for the purpose of bringing her to justice.

Malice can be inferred from a lack of probable cause. *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993); *Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 71 (3d Cir. 2017); *Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 871 (E.D. Pa. Oct. 20, 2000).[55] So too can malice be inferred from the omission of material facts and the inclusion of misleading information affecting the probable cause determination.  Therefore, if the jury finds Jones and Falcon lacked probable cause for bringing charges against Alburg and withheld exculpatory information from the magisterial district judge while disregarding Correia's advice, it can infer that they acted maliciously.

Kearney and Palo argue that Edwards cannot prove three of the five essential elements of his malicious prosecution claim.  They contend the criminal proceedings did

not end in his favor, they had probable cause to initiate the proceedings, and they did not act maliciously or for a purpose other than bringing him to justice.

Edwards moves for summary judgment against Kearney, Jones, and Palo on his malicious prosecution claim.  It is undisputed that Palo initiated a criminal proceeding,[56] all theft charges were dismissed,[57] and Edwards suffered a deprivation of liberty.[58] Edwards maintains that the prosecution was initiated without probable cause and for a malicious and improper purpose.

Kearney and Palo argue that Edwards cannot prove that the proceedings ended in his favor.  They correctly point out that even though the felony theft charges were dismissed, he pleaded guilty to the summary offense of driving on a suspended license.

This argument is based on the "any crime" rule.  That rule provides that if there was probable cause for one crime among several charged, a malicious prosecution claim based on the other charges lacking probable cause is barred.

The Supreme Court has recently rejected the "any crime" rule.  In *Chiaverini v. City of Napoleon, Ohio*, the Supreme Court held that "the presence of probable cause for one charge does not automatically defeat a Fourth Amendment malicious-prosecution claim alleging the absence of probable cause for another charge."  602 U.S. 556, 561 (2024).

In this case, before *Chiaverini* was announced, the Third Circuit had already held that a guilty plea on one charge does not prevent a malicious prosecution claim on other charges that were not supported by probable cause.  *Alburg*, 2023 WL 2823895, at *3. The court relied on its own precedent in *Harvard v. Cesnalis*, 973 F.3d 190, 199 n.3 (3d Cir. 2020).  *Id.* at 3.

To satisfy the favorable result element, Edwards need only show that the theft charges did not result in a conviction. He has done so. The charges were dismissed. Thus, he has proven that the criminal proceedings ended in his favor.

Palo and Kearney argue that there was probable cause to charge Edwards with the theft crimes because the databases reported the car as stolen and the State Police confirmed that the car was still in stolen status. They claim that there was no need to do any more investigation. They ignore that the databases listed Alburg as the owner, whom Edwards identified by name as having given him permission to operate the car. Based upon these facts, a jury could find that Palo brought charges "with a reckless disregard for the truth" and with deliberate indifference to Edwards's right to be free from an unlawful arrest. *Mervilus*, 73 F.4th at 194.

Kearney and Palo also argue Edwards cannot show they acted maliciously because there are no facts showing either one was motivated by anything malicious or improper. Edwards has asserted that the improper purpose was to assist AEL in the repossession process. Looking at the totality of the circumstances, including that Alburg was the registered owner who Edwards claimed had given him permission to drive the car and that Palo failed to check with Alburg, a jury could find Palo acted with deliberate indifference. Whether the police acted maliciously or for an improper purpose is a question of fact for the jury. *See In re Asbestos,* 822 F.3d at 135 (citing *Anderson*, 477 U.S. at 255).

Kearney did nothing wrong. He had probable cause to stop and arrest Edwards after observing the vehicle he was driving had a tarp covering the rear window in violation of the Motor Vehicle Code and that it was listed as stolen. He followed protocol and the

Motor Vehicle Code when he had the vehicle towed to a nearby storage lot.  *See* 75 Pa. C. S. § 3352(c)(1).  He prepared a report for Palo that correctly described the circumstances and the arrest, leaving it to Palo to process the case.  Kearney did not initiate the criminal proceedings against Edwards.  He is entitled to summary judgment on the malicious prosecution count.

Palo is a different story.  He decided to bring the criminal proceeding against Edwards.

Palo was a detective.  It was his job to investigate.  He did not check Edwards's claim that he had the owner's permission to drive the car.  Alburg was listed on the database as the registered owner and Edwards had identified her by name as the owner. Palo knew that if Edwards had her permission, there was no receiving stolen property offense and no unauthorized use of an automobile offense.  Yet, he pushed for Edwards's prosecution without confirming with Alburg.  These facts could lead a jury to find he acted with deliberate indifference and in reckless disregard of Edwards's rights.

Not only did Palo not investigate Edwards's account, he omitted material facts from the affidavit of probable cause he drafted and submitted to the magisterial district judge. There is nothing in the affidavit showing any connection of Edwards to the owner of the car which would have alerted the magisterial judge that Edwards's claim of having the owner's permission may have been true.  On the contrary, the affidavit suggests Alburg was not the owner.  Palo did not include that Alburg – not Edwards – had taken the car from Top Notch.  Instead, he represented that AEL was the owner and the car was stolen from Top Notch.  He omitted that PennDOT records listed Alburg as the owner – the person Edwards claimed had given him permission.

Those are facts an issuing authority should have known.  They had a bearing on whether the crimes of receiving stolen property and unauthorized use of an automobile had been committed.  Without all the facts, the affidavit presented a false narrative.  Had the magisterial district judge known Alburg was the registered owner and had permitted Edwards to use the car, he would not have issued an arrest warrant.  The judge would have known that under Pennsylvania law, Edwards could not have committed the theft crimes.

Palo claims he did not know that Alburg was the registered owner at that time.  But, he references the CLEAN database in the affidavit, revealing that he checked the database.  At his deposition, he acknowledged that CLEAN showed Alburg was the registered owner and AEL was a lienholder.  His credibility is squarely at issue.

*Qualified Immunity*

Having determined that the defendants are not entitled to summary judgment on the false arrest and malicious prosecution claims, we must consider their invocation of qualified immunity.

Government officials are immune from suit when their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

A police officer sued for a constitutional violation may be entitled to qualified immunity, shielding the officer from trial and liability. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). Qualified immunity ensures that officers were on notice that their conduct was

unlawful before they are subjected to suit. *Thomas v. City of Harrisburg*, 88 F.4th 275, 283 (3d Cir. 2023) (citing *Katz*, 533 U.S. at 201, 206).

In evaluating a qualified immunity defense, we ask two questions. First, do the alleged facts, viewed in the light most favorable to the plaintiff, demonstrate that the officer's conduct violated a constitutional right? *Montemuro v. Jim Thorpe Area Sch. Dist.*, 99 F.4th 639, 645 (3d Cir. 2024); *Jefferson v. Lias*, 21 F.4th 74, 80 (3d Cir. 2021) (citing *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010)). Second, was the right so "clearly established" at the time that a reasonable officer would have known that his conduct was unlawful? *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 449 (3d Cir. 2020 (citing *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 848 F.3d 549, 557 (3d Cir. 2017)). If the answer is yes to both questions, the officer is not entitled to qualified immunity.

We may address the questions in either order. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). If we find that the right was not clearly established, the inquiry ends and the officer is entitled to qualified immunity. To deny immunity, there must be sufficient precedent at the time of the action to put the officer on notice that his conduct was prohibited.

The relevant inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Katz*, 533 U.S. at 202.

Jones and Falcon contend it was not clearly established "that there was no probable cause for a crime when Alburg, after being granted permission to enter a fenced lot to retrieve personal belongings from a vehicle lawfully repossessed by a creditor,

following her default on the loan, decided to suddenly drive away with that vehicle."[59] That is not the right at issue.  It is Alburg's right to be free from an illegal arrest without probable cause and malicious prosecution based on a materially deficient affidavit of probable cause that omitted material facts and included misleading representations that would have militated against a finding of probable cause.

Mindful that the right must have been so clearly established that a reasonable officer would have known his conduct was unlawful, we conclude that it was well-established that it would be clear to a reasonable officer that omitting exculpatory and material information that bears on probable cause in an application for an arrest warrant violates the Fourth Amendment.  *Fallen v. McEnroe*, 2025 WL 32816, at *3 (3d Cir. Jan. 6, 2025).  In *Sherwood*, the Third Circuit held that a police officer is not entitled to qualified immunity if he "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant" and "such statements or omissions [were] material, or necessary, to the finding of probable cause."  113 F.3d at 399.  The right was clearly established before *Fallen*.  The Supreme Court had made this clear, in *Franks*.  438 U.S. at 155-56.  The Third Circuit, in 1978, reiterated that an applicant for an arrest warrant must include exculpatory facts in his affidavit.  *Wilson*, 212 F.3d at 787.  Failure to do so results in an illegal arrest.

In Alburg's case, she was the undisputed title owner of the vehicle.  That fact alone could have affected the probable cause finding.  As the owner, she could not have unlawfully taken her own property.  *See* 18 Pa. C. S. §§ 3921(a), 3922(a).

As noted earlier, Jones's affidavit omitted several material facts and misrepresented others. Those facts had a direct bearing on the probable cause determination and were facts the magisterial district judge should have known.

Falcon proceeded with criminal charges against Alburg despite the advice of ADA Correia and the legal impossibility of her having committed the charged crimes. Falcon knew the real facts. Nonetheless, he instructed Jones to secure an arrest warrant. Thus, Jones and Falcon are not entitled to qualified immunity on Alburg's false arrest and malicious prosecution claims.

Edwards's right to be free from arrest and prosecution without probable cause has long been clearly established. *Fallen*, 2025 WL 32816, at *2 (citing *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995)) (arrest); *Gallo v. City of Philadelphia*, 161 F.3d 217, 220 n.4 (3d Cir. 1998) (prosecution); *see also Pinkney v. Meadville, Pennsylvania*, 95 F.4th 743, 749-50 (3d Cir. 2024)). As we have determined, Edwards's prosecution for receiving stolen property when he had the registered owner's permission to operate the vehicle, and his subsequent detention and prosecution without probable cause on the theft charges were unlawful. But, he was also charged and prosecuted for driving on a suspended license, a charge to which he pleaded guilty.

Before the Supreme Court held in *Chiaverini* that probable cause on one charge does not preclude a Section 1983 malicious prosecution claim on another charge that lacked probable cause, the law in the Third Circuit was unclear. In *Rivera-Guadalupe v. City of Harrisburg*, the Third Circuit observed that its previous decisions created a "tension" and "confusion," prompting it to define the right and declare that *Chiaverini* "states the rule for malicious-prosecution claims." 124 F.4th 295, 302-03 (3d Cir. 2024).

At the time Palo and Kearney proceeded with the prosecution of Edwards, the right defined in *Chiaverini* was not clearly established. Therefore, they are entitled to qualified immunity on Edwards's malicious prosecution claim.

## Conclusion

Summary judgment on Count I for illegal seizure and denial of due process is granted in favor of Jones, Palo and Kearney. Summary judgment on Count II is denied because there are genuine disputes of material fact as to whether defendants Jones and Falcon had probable cause to arrest Alburg. For the same reason, summary judgment on Count VI for malicious prosecution is denied as to Alburg. Jones, Palo and Kearney are entitled to qualified immunity on Count VI as to Edwards.

---

[1] *See* Am. Compl., ECF No. 10.

[2] The case was originally assigned to Judge Tucker. After remand, it was reassigned to Judge Pratter. In response to Judge Pratter's order, the parties stipulated what claims remained. Stipulation re: Remaining Claims and Briefing Schedule, ECF No. 26 ["Stipulation"].

[3] *See* Statement of Undisputed Facts ¶¶ 3, 8, ECF No. 46-1 ["Pls.' SUF"] (attached to Pls.' Mot. for Partial Summ. J. on Liability, ECF No. 46); Resp. to Pls.' Statement of Undisputed Facts ¶¶ 3, 8, ECF No. 48-1 ["County Defs.' SUF"] (attached to Resp. of Defs., Det. Lt. Palo and Officer Kearney, to Pls.' Mot. for Partial Summ. J. on Liability, ECF No. 48); PSP Defs' Resp. to Pls.' Statement of Uncontested Facts ¶¶ 3, 8, ECF No. 52-1 ["PSP Defs.' SUF"] (attached to PSP Defs. Resp. in Opp'n. to Pls.' Mot. for Partial Summ. J. on Liability).

[4] Pls.' SUF ¶ 59; County Defs.' SUF ¶ 59; PSP Defs.' SUF ¶ 59. The interest rate was illegal under Pennsylvania civil and criminal law.

[5] Pls.' SUF ¶ 7; County Defs.' SUF ¶ 7; PSP Defs.' SUF ¶ 7.

[6] Pls.' SUF ¶ 4; County Defs.' SUF ¶ 4; PSP Defs.' SUF ¶ 4.

[7] Pls.' SUF ¶ 4; County Defs.' SUF ¶ 4; PSP Defs.' SUF ¶ 4.

[8] Pls.' SUF ¶ 1; County Defs.' SUF ¶ 1; PSP Defs.' SUF ¶ 1.

[9] Pls.' SUF ¶ 3; County Defs.' SUF ¶ 3; PSP Defs.' SUF ¶ 3.

[10] Pls.' SUF ¶ 7; County Defs.' SUF ¶ 7; PSP Defs.' SUF ¶ 7.

[11] Pls.' SUF ¶ 7; County Defs.' SUF ¶ 7; PSP Defs.' SUF ¶ 7.

[12] Pls.' SUF ¶ 9; County Defs.' SUF ¶ 9; PSP Defs.' SUF ¶ 9.

[13] Pls.' SUF ¶ 9; County Defs.' SUF ¶ 9; PSP Defs.' SUF ¶ 9.

[14] Pls.' SUF ¶ 13; County Defs.' SUF ¶ 13; PSP Defs.' SUF ¶ 13.

[15] Pls.' SUF ¶¶ 16-17; County Defs.' SUF ¶¶ 16-17; PSP Defs.' SUF ¶¶ 16-17.

[16] Pls.' SUF ¶ 18; County Defs.' SUF ¶ 18; PSP Defs.' SUF ¶ 18.

[17] Pls.' SUF ¶ 18; County Defs.' SUF ¶ 18; PSP Defs.' SUF ¶ 18.

[18] Pls.' SUF ¶¶ 19-20; County Defs.' SUF ¶¶ 19-20; PSP Defs.' SUF ¶¶ 19-20.

[19] Pls.' SUF ¶ 20; County Defs.' SUF ¶ 20; PSP Defs.' SUF ¶ 20.

[20] Pls.' SUF ¶ 30; County Defs.' SUF ¶ 30; PSP Defs.' SUF ¶ 30.

[21] Pls.' SUF ¶ 31; County Defs.' SUF ¶ 31; PSP Defs.' SUF ¶ 31; Statement of Charles Palo, ECF No. 47-14 (attached as Ex. RD13 to Mot. for Summ. J. of Defs., Ret. Det. Lt. Charles Palo and Off. Timothy Kearney, ECF No. 47).

[22] Pls.' SUF ¶ 23; County Defs.' SUF ¶ 23; PSP Defs.' SUF ¶ 23.

[23] Pls.' SUF ¶¶ 32-33; County Defs.' SUF ¶¶ 32-33; PSP Defs.' SUF ¶¶ 32-33.

[24] Pls.' SUF ¶ 34; County Defs.' SUF ¶ 34; PSP Defs.' SUF ¶ 34.

[25] Pls.' SUF ¶¶ 34-35; County Defs.' SUF ¶¶ 34-35; PSP Defs.' SUF ¶¶ 34-35.

[26] Pls.' SUF ¶ 40; County Defs.' SUF ¶ 40; PSP Defs.' SUF ¶ 40.

[27] Pls.' SUF ¶ 42; County Defs.' SUF ¶ 42; PSP Defs.' SUF ¶ 42; 75 Pa. C. S. §§ 1501(a)(d), 1543(a).

[28] Pls.' SUF ¶ 41; County Defs.' SUF ¶ 41; PSP Defs.' SUF ¶ 41.

[29] Pls.' SUF ¶ 43; County Defs.' SUF ¶ 43; PSP Defs.' SUF ¶ 43.

[30] Pls.' SUF ¶ 46; County Defs.' SUF ¶ 46; PSP Defs.' SUF ¶ 46.

[31] Pls.' SUF ¶¶ 47-48; County Defs.' SUF ¶¶ 47-48; PSP Defs.' SUF ¶¶ 47-48.

[32] Pls.' SUF ¶ 49; County Defs.' SUF ¶ 49; PSP Defs.' SUF ¶ 49.

[33] Pls.' SUF ¶ 50; County Defs.' SUF ¶ 50; PSP Defs.' SUF ¶ 50.

[34] Pls.' SUF ¶ 51; County Defs.' SUF ¶ 51; PSP Defs.' SUF ¶ 51.

[35] Pls.' SUF ¶ 52; County Defs.' SUF ¶ 52; PSP Defs.' SUF ¶ 52.

[36] Pls.' SUF ¶ 53; County Defs.' SUF ¶ 53; PSP Defs.' SUF ¶ 53.

[37] Pls.' SUF ¶ 55; County Defs.' SUF ¶ 55; PSP Defs.' SUF ¶ 55.

[38] Pls.' SUF ¶ 61; County Defs.' SUF ¶ 61; PSP Defs.' SUF ¶ 61.

[39] Pls.' SUF ¶ 62; County Defs.' SUF ¶ 62; PSP Defs.' SUF ¶ 62.

[40] Pls.' SUF ¶¶ 63-64; County Defs.' SUF ¶¶ 63-64; PSP Defs.' SUF ¶¶ 63-64.

[41] Pls.' SUF ¶ 44; County Defs.' SUF ¶ 44; PSP Defs.' SUF ¶ 44.

[42] Pls.' SUF ¶ 44; County Defs.' SUF ¶ 44; PSP Defs.' SUF ¶ 44.

[43] Because we address Alburg's claim under the Fourth Amendment, we do not address her substantive due process claim under the Fourteenth Amendment.  "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 447 (3d Cir. 2020) (citing *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)).

[44] The Third Circuit, in this case, has instructed that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.  *Alburg v. Jones*, 2023 WL 2823895, *2 (3d Cir. 2023) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)).

[45] Although the plaintiffs did not name Kearney in Count One of the complaint asserting an illegal seizure, the parties include him in their analyses of the issue in their summary judgment motions and memoranda of law.  Thus, we address Kearney's involvement in the seizure.

[46] The parties stipulated to Count I "as described in her complaint."  Stipulation.  The Complaint includes both illegal seizure and due process claims under Count I.  Am. Compl. ¶ 85.

[47] Statement of Charles Palo.

[48] Criminal Complaint and Affidavit of Probable Cause, at 13-17, ECF No. 46-3 (attached as Ex. P-1 to Pls.' Mot. for Partial Summ. J. on Liability, ECF No. 46).

[49] Incident Report, at 5, ECF No. 46-3 (attached as Ex. P-1 to Pls.' Mot. for Partial Summ. J. on Liability, ECF No. 46); Falcon-Rastegarpanah email, ECF No. 50-5 (attached as Ex. PSP-5 to Statement of Material Facts in Supp. of PSP Defs.' Mot. for Summ. J.).

[50] Defendants argue there was probable cause to arrest Alburg because it was not clear that Alburg had not stolen the car, as evidenced by the fact that the case was not dismissed at the first hearing. However, subsequent court proceedings are not evidence of probable cause at the time of the issuance of the warrant. *See United States v. Loy*, 191 F.3d 360, 365 (3d Cir. 1999).

[51] Pls.' SUF ¶¶ 54, 61; County Defs.' SUF ¶¶ 54, 61; PSP Defs.' SUF ¶¶ 54, 61.

[52] Pls.' SUF ¶¶ 63-64; County Defs.' SUF ¶¶ 63-64; PSP Defs.' SUF ¶¶ 63-64.

[53] Pls' SUF ¶ 62; County Defs.' SUF ¶ 62; PSP Defs.' SUF ¶ 62.

[54] *See supra* pp. 15-17.

[55] Although these cases discuss the common law tort of malicious prosecution, we analyze malicious prosecution elements under § 1983 by looking to the analogous common law tort.  *Thompson v. Clark*, 596 U.S. 36, 43 (2022).

[56] Pls.' SUF ¶¶ 20, 32; County Defs.' SUF ¶¶ 20, 32; PSP Defs.' SUF ¶¶ 20, 32.

[57] Pls.' SUF ¶ 44; County Defs.' SUF ¶ 44; PSP Defs.' SUF ¶ 44.

[58] Pls.' SUF ¶ 43; County Defs.' SUF ¶ 43; PSP Defs.' SUF ¶ 43.

[59] PSP Defs.' Mot for Summ. J., at 8, ECF No. 49.